UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00279-CRS

STEPHEN C.                                                                                    PLAINTIFF

VS.

MARTIN O'MALLEY,
*Commissioner of Social Security[1]*                                          DEFENDANT

## REPORT AND RECOMMENDATION

Claimant Stephen C. appeals from the final determination of the Commissioner of Social Security denying his application for child disability benefits. (DN 1). Claimant has filed a Fact and Law Summary (DN 11). The Commissioner has responded in a Fact and Law Summary. (DN 14). The time for Claimant to file a reply brief has expired. The District Judge has referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 10).

### I. Findings of Fact

Stephen C. ("Claimant") applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI on June 23, 2020. (Tr. 277, 283). The applications alleged Claimant's disability began on June 3, 2019, due to traumatic brain injury, MRSA, and hematoma. (Tr. 338, 345). Claimant's applications were denied at both the initial and reconsideration levels. (Tr. 79-151).

At Claimant's request, Administrative Law Judge Donna Lefebvre ("ALJ Lefebvre") conducted a hearing in Knoxville, Tennessee on March 4, 2022. (Tr. 39). Claimant attended the

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

hearing in by telephone with his attorney.[2] (*Id.*). An impartial vocational expert also participated in the hearing. (*Id.*).

During the hearing, Claimant testified to the following. Claimant is thirty-six years old and has his GED. (Tr. 46). He lives in a house with his mother and stepfather. (Tr. 47). His four children live with their other parent, but he sees them about once a month. (*Id.*; Tr. 69). He doesn't drive and recently quit smoking. (*Id.*). Claimant is in recovery for substance abuse and has not had a relapse since June of 2019. (Tr. 47-48). From roughly 2007 to 2012, Claimant worked as an assistant general manager at Taco Bell (Tr. 50-51); then in 2014, Claimant worked in home construction and remodeling for a temporary agency (Tr. 49).

On June 3, 2019, Claimant suffered a traumatic assault injury. (Tr. 52). As summarized by Claimant's Counsel:

> [Claimant] sustained a very traumatic brain injury with a skull fracture, a traumatic epidural hematoma, large hemicraniectomy defect. There was frontotemporal craniotomy, a pterional craniotomy with mesh reconstruction, craniotomy evacuation of the hematoma. It was complicated by the MRSA infection, and he had a surgical removal of the bone flap, then complicated further by hematoma at the surgical site. A re-evacuation surgical procedure where the scalp flap was sunken. He did a reconstruction of the skull with a cranioplasty. That native bone was discarded due to the infection from the surgical site.

(Tr. 45). Claimant now deals with migraine headaches that last an hour or two and take a lot out of him. (Tr. 53). His seizures have improved since his medication was adjusted, and he has not had one for about six months. (Tr. 55).

Since his surgeries, Claimant experiences difficulty with memory and concentration, citing that he runs the washing machine repeatedly and misplaces his wallet. (Tr. 55-56). He will watch a movie he has seen before but will not remember the plot. (Tr. 56). Claimant does not believe he could understand or remember work instructions or maintain a consistent pace during an eight-

---

[2] Claimant waived his right to an in-person hearing because of the COVID-19 pandemic. (Tr. 41).

hour workday with regular breaks. (Tr. 58). His panic attacks, depression, and PTSD episodes, Claimant believes, would limit his ability to handle stress in a work environment. (Tr. 60-61). He isolates himself, mostly staying in his room alone, and only sees his mother, his stepfather, and his kids from time to time. (Tr. 61).

ALJ Lefebvre issued an unfavorable decision on March 18, 2022. (Tr. 7-20). She applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since June 3, 2019, his alleged onset date. (Tr. 12). Second, Claimant has the severe impairments of traumatic brain injury; post traumatic headache disorder; epilepsy; neurocognitive disorder; pre-senile dementia; posttraumatic stress disorder (PTSD); anxiety; and depression. (Tr. 23). Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). At Step Four, ALJ Lefebvre found Claimant has the residual functional capacity to perform "light work" with the following exceptions:

> [H]e could lift up to twenty pounds occasionally and ten pounds frequently and could stand and walk for up to six hours and sit for up to six hours in an eight-hour day, with normal breaks. The claimant could frequently climb ramps or stairs and never climb ladders or scaffolds. He could frequently stoop, kneel, crouch, or crawl and never balance, as defined in the *Selected Characteristics of Occupations* of the DOT (the *Selected Characteristics of Occupations'* definition of balancing is: "Maintaining body equilibrium to prevent falling when walking, standing[,] crouching, or running on narrow, slippery or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats."). The claimant could perform jobs that do not require excessive vibration and do not require the operation of moving and hazardous machinery or work around unprotected heights. He could understand, remember, and carry out simple instructions and perform simple tasks ("simple" is defined as instructions or tasks in jobs with initial duties and work in an environment that is not stringently production or quota-based, such as fast-paced assembly line work, but can sustain a flexible and goal-oriented pace. The claimant could perform jobs requiring no public interaction in their job duties and could sustain occasional interaction with coworkers and supervisors.

(Tr. 14-15). Also at Step Four, ALJ Lefebvre determined Claimant is unable to perform any past relevant work. (Tr. 19). Fifth and finally, considering Claimant's age, education, work experience and RFC, jobs exist is significant numbers in the national economy that he can perform. (*Id.*).

ALJ Lefebvre concluded Claimant was not under a disability, as defined in the Social Security Act, from June 3, 2019 through March 18, 2022, the date of this decision. (Tr. 20). Claimant appealed ALJ Lefebvre's decision. (Tr. 443-45). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Lefebvre's decision. (Tr. 1-3). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant identifies two issues with ALJ Lefebvre's decision, both relating to ALJ Lefebvre's Step-Three evaluation of whether Claimant's impairments met or equaled a medical listing.

#### A. ALJ Lefebvre's Evaluation of Listing 12.02

First, Claimant argues that if ALJ Lefebvre had fully considered Dr. Steven J. Simon's opinion, she would have found that Claimant's neurocognitive disorder met or medically equaled Listing 12.02. (DN 11-1, at PageID # 7188-89). Specifically, Claimant relies on Dr. Simon's test scores to argue that his mental impairments meet or medically equal the criteria of Listing 12.02. (*Id.*). Claimant also notes that although ALJ Lefebvre found Dr. Simon's opinion was persuasive using the correct analysis pursuant to the regulations, she incorrectly fashioned an RFC less restrictive than Dr. Simon's opinion. (*Id.*).

The Commissioner responds that ALJ Lefebvre properly found Plaintiff did not meet or equal a medical listing with reference to the "Paragraph B" criteria used in assessing mental impairments under the listing and supported her conclusions with citations to substantial evidence

in the record. (DN 14, at PageID # 7206). The Commissioner explains that Listing 12.02 is only met if two marked and one extreme level of functioning from the Paragraph B criteria are established but Claimant has no more than moderate limitations in any level of functioning. (*Id.* at PageID # 7206-07).

Listing 12.02 governs Neurocognitive Disorders. To satisfy this Listing, a claimant must meet subparts "A and B, or A and C . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.02. The requirements for these subparts are:

A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:

1. Complex attention;

2. Executive function;

3. Learning and memory;

4. Language;

5. Perceptual-motor; or

6. Social cognition.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a

period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structed setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.*

Here, ALJ Lefebvre determined Claimant's mental impairments did not meet or medically equal the criteria of Listing 12.02 by evaluating her impairments under the "B" and "C" criteria. (Tr. 13-14). Citing to objective and subjective medical evidence, ALJ Lefebvre found Claimant had moderate limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, and maintaining pace; and in adapting and managing himself. (*Id.*). In evaluating the "C" criteria, ALJ Lefebvre stated there was nothing in the record to suggest Claimant requires an ongoing, highly structured setting due to his mental health issues or that a change in his environment would cause any type of failure to adjust. (Tr. 14).

It was not necessary for ALJ Lefebvre to evaluate the "A" criteria of Listing 12.02 because she found Claimant could not meet either the "B" or "C" criteria. And Claimant does not challenge ALJ Lefebvre's conclusion that he does not meet the "C" criteria. The Court's review then is limited to whether ALJ Lefebvre's evaluation of the "B" criteria is supported by substantial evidence in the record and whether she gave explained conclusions sufficient to enable meaningful judicial review.

Claimant has not marshalled evidence suggesting he meets Listing 12.02. Claimant cites to low results from memory tests performed by Dr. Simon as demonstrating his marked limitation in his ability to understand, remember, or apply information and his ability to concentrate, persist,

and maintain pace. But ALJ Lefebvre explicitly considered Dr. Simon's testing and additional record evidence in determining Claimant had only moderate limitations in these areas. (Tr. 13-14).

To support her finding that Claimant is moderately limited in understanding, remembering, or applying information, ALJ Lefebvre explained that psychological evaluations, including Dr. Simon's evaluation, have reflected Claimant's impaired memory with normal thought processes and normal thought content. (Tr 13, (citing Exs. 8F and 11F)). ALJ Lefebvre also noted Claimant's subjective reports that he prepares meals rarely and cannot handle money effectively. (*Id.* (citing Exs. 4E and 11E)). Then in finding Claimant was moderately limited in concentrating, persisting, and maintaining pace, ALJ Lefebvre cited Claimant's reports of problems with concentration and varying ability to pay attention, along with objective testing, including those tests performed by Dr. Simon, supporting moderate difficulty with processing speed. (Tr. 14 (citing Exs 4E, 11E, and 8F)). An ALJ's analysis at Step Three must provide sufficient articulation for adequate judicial review. ALJ Lefebvre's evaluation of Listing 12.02 meets this standard and is supported by substantial evidence in the record.

Turning to Claimant's allegation regarding ALJ Lefebvre's incorporation of Dr. Simon's opinion into the RFC, the Court again finds no error. Dr. Simon performed a consultative examination on Claimant on October 12, 2020. After conducting numerous diagnostic tests, Dr. Simon concluded Claimant has: mild impairment in understanding and following through from simple verbal instructions; moderate to severe impairment in memory with increasing complexity in instructional set; moderate impairment in information processing speed; middle to moderate impairment in cooperating and getting along with others; moderate impairment in his capacity to cope with changes in routine and routine daily stress; and mild impairment in his capacity to take care of routine daily self-care needs. (Tr. 611-619).

In her RFC determination, ALJ Lefebvre found Dr. Simon's opinion was persuasive as it is "well supported by his extensive testing of the claimant and by the evidence in general." (Tr. 17-18). ALJ Lefebvre continued: "[Dr. Simon's] testing revealed borderline intellectual functioning and problems with processing speed and memory that support his estimation of mild difficulty with simple instructions but much worse problems (moderate to severe) with complex ones. The claimant's anxiety and depression also cause moderate difficulties with adaptation, concentration, and interaction." (Tr. 18).

Conceding that ALJ Lefebvre properly evaluated the consistency and supportability of Dr. Simon's opinion in accordance with the regulations, Claimant challenges that ALJ Lefebrve did not properly incorporate Dr. Simon's restrictions into the RFC. (DN 11-1, at PageID # 7187-88). Claimant points to Dr. Simon's Test of Premorbid Functioning (TOPF), where Claimant fell within the borderline range, and Dr. Simon's WMS-IV testing, where Claimant's results all fell "within the Extremely low range with the exception of low Borderline range delayed recall as well as Low range recall on the visual portion of the Bender-Gestalt 2." (*Id.* (citing Tr. 618)). These findings considered together, Claimant asserts, support that his intellectual functioning is now less than Borderline, which necessarily places him in the range of intellectual disability. (*Id.*).

The ALJ's job in forming the RFC is to determine the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). And while an ALJ must consider "all the relevant evidence in [a claimant's] case record[,]" the ALJ is required to state a claimant's RFC in terms of functional limitations. *Id.* Even where an ALJ finds an opinion persuasive, "there is no requirement that an ALJ adopt . . . the opinion[] verbatim; nor is the ALJ required to adopt the [physician's] limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

9

Claimant asks the Court to make a leap in connecting raw testing data to a finding of intellectual disability. As the Commissioner noted, Claimant is conflating medical evidence with medical opinion evidence. Claimant does not identify any opined limitation from Dr. Simon's opinion that is inconsistent with the limitations ALJ Lefebvre incorporated in the RFC. Additionally, ALJ Lefebvre discussed Dr. Simon's testing and results in recounting the medical evidence in her RFC analysis. ALJ Lefebvre specifically noted that Dr. Simon's testing of Claimant's memory "suggested it fell in the extremely low to borderline range." (Tr. 16-17). Although ALJ Lefebvre did not specifically mention Dr. Simon's finding that Claimant had "Low range recall on the visual portion of the Bender-Gastalt-2," Dr. Simon's statement does not necessarily correlate to functional limitation beyond what he opined in his medical source statement.

By finding Dr. Simon's opinion persuasive, ALJ Lefebvre was not required to adopt medical testing data into her RFC but was required to incorporate Dr. Simon's supported and consistent limitations into functional RFC limitations. Here, ALJ Lefebvre's RFC limitations correspond to Dr. Simon's conclusions regarding Claimant's limitations in different categories of impairment and are not less restrictive as Claimant alleges. Accordingly, Claimant has not demonstrated any reversible error stemming from the ALJ's evaluation of Dr. Simon's opinion.

B. ALJ Lefebvre's Evaluation of Claimant's Post Traumatic Headache Disorder

Next, Claimant alleges ALJ Lefebvre erred by finding Claimant's post traumatic headache disorder was a severe impairment at step two but then failed to evaluate his chronic headaches under Listing 11.02 at Step Three and in her RFC determination.  (DN 11-1, at PageID # 7189-90). Claimant points to neurology records discussing his chronic headaches as early as August 7, 2020, and records that continually documented his daily headaches through February of 2021. (*Id.*

(citing Tr. 630, 655-57, 666, 1197, 1189)). The ALJ's failure to consider Plaintiff's post traumatic headaches beyond step three, Claimant alleges, is particularly egregious because Claimant also suffers from epilepsy. (*Id.*).

The Commissioner argues that although ALJ Lefebvre did not mention Listing 11.02 by name, her citation to SSR 19-4p demonstrates she made the requisite evaluation of Claimant's headache disorder at Step Three. (DN 14, at PageID # 7208-09). The Commissioner also points out that ALJ Lefebvre considered that Claimant's headaches improved over time at Step Three and then later provided more detail regarding Claimant's improvements with proper medication in her RFC analysis. (*Id.*, at PageID # 7209). These findings, the Commissioner maintains, are supported by substantial evidence in the record, and Claimant cannot meet or medically equal Listing 11.02 or otherwise meet the requirements of SSR 19-4p. (*Id.* at PageID # 7209-10).

At Step Three, ALJ Lefebvre briefly considered Claimant's headaches, citing to SSR 19-4p. (Tr. 13). But because his headaches "have improved over the course of the period in question" and "do not cause neurological symptoms or deficits such that any relevant listing is implicated[,]" ALJ Lefebvre determined Claimant's headache condition "falls well short of meeting or equaling a listing." (*Id.*).

First, the Court finds no error in ALJ Lefebvre failing to mention Listing 11.02 by name when evaluating Claimant's headache disorder at Step Three. By stating she considered Claimant's headaches pursuant to SSR 19-4p and referencing that no neurological symptoms implicate any relevant listing, ALJ Lefebvre appropriately identified the relevant standards for evaluating the Claimant's headaches under the listings.

Additionally, ALJ Lefebvre appropriately applied the relevant standards and properly evaluated Claimant's headaches pursuant to SSR 19-4p. The Appendix of listed impairments does

not include an entry for primary headache disorder. Social Security Ruling 19-4p was enacted to fill this void and guide an ALJ's consideration of headache disorders in the sequential evaluation process. SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Pursuant to SSR 19-4p, an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id.* at *7. The Ruling identifies that the "most closely analogous listed impairment" for a medically determinable impairment of primary headache disorder is Listing 11.02 – Epilepsy. *Id.*

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the ALJ must consider:

> A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

ALJ Lefebvre's discussion of Claimant's headaches under SSR 19-4p is somewhat cursory but is supported by substantial evidence in the record. Claimant's frequent migraine headaches are consistently noted in his medical records. However, in January of 2021, Claimant began treating with APRN Crystal Bohannon. During his first visit, Claimant reported almost daily headaches and migraines "almost all the time" but that he wasn't taking any headache medication beyond ibuprofen. (Tr. 1196-97). APRN Bohannon prescribed him three medications (Prozac, Vistaril, and Elavil) and directed Claimant to stop taking Motrin as it could cause rebound headaches. (Tr. 1198). By Claimant's next appointment, in February of 2021, Claimant noted some improvement

with these new medications, which he described as "nice." (Tr. 1189). Then, in May of 2021, Claimant did not report concerns with headaches, indicated his medication for sleeping was "working well" but that his medication for anxiety and depression wasn't really helping. (Tr. 1181). Two months later Claimant reported to APRN Bohannon that he was "feeling good." (Tr. 1172). Four months later, Dr. Ben Schoenbachler noted that Claimant's headaches were "tolerable but not gone." (Tr. 711). Dr. Schoenbachler assessed that if amitriptyline wasn't helping Claimant's headaches sufficiently, a medication with less anticholinergic burden could be prescribed. (Tr. 713). These records considered together constitute substantial evidence supporting ALJ Lefebvre's determination that Claimant's headaches "have improved over the course of the period in question." (Tr. 13).

Moreover, the Sixth Circuit has upheld an ALJ's sparse step-three evaluation when an ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination and finding no need to require the ALJ to "spell out every fact a second time")). ALJ Lefebvre's RFC determination considered various aspects of the SSR 19-4p analysis as well. For instance, ALJ Lefebvre discussed Claimant's testimony that he developed migraine headaches following his assault that occur daily and require him to lay down and Claimant's recurring complaints of headaches. (Tr. 15-16 (citing Ex. 9F)). But ALJ Lefebvre's RFC also noted Claimant's reports of fewer headaches after APRN Bohannon prescribed new medication. (Tr. 17 (citing Ex. 14F)). Again, while Claimant suffered from consistent headaches following the traumatic assault and resulting surgeries, the record evidence demonstrates his headaches have diminished once appropriate medication was

prescribed. Accordingly, ALJ Lefebvre properly considered the factors outlined in SSR 19-4 and Listing 11.02 throughout her decision, and no error results.

Lastly, Claimant emphasizes that ALJ Lefebvre's failure to properly consider his headaches is "particularly egregious" because ALJ Lefebvre also found him to have the severe impairment of epilepsy. (DN 11-1, at PageID # 7189). However, the record documents similar improvement in Claimant's epilepsy over the period in question. Dr. Schoenbachler's records from October and November of 2021 include Plaintiff's report that he did not have any seizures in the six months since his medications were adjusted. (Tr. 710, 714). During his administrative hearing in March of 2022, Claimant similarly testified that his seizures are a lot better and he hasn't had one in a while. (Tr. 54). Reflective of this medical evidence, ALJ Lefebvre stated at Step Three that Claimant's seizure disorder "is apparently well controlled with medication" and "[t]here is no indication of seizure[s] that occur with the frequency that is contemplated by the relevant listing." (Tr. 13). Because ALJ Lefebvre's determinations that Claimant's headaches and seizures had improved with medication are supported by substantial evidence, the Court again finds no error.

<u>IV. Recommendation</u>

Because the ALJ Lefebvre's decision is supported by substantial evidence in the record and comports with the applicable regulations, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

14

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. '' 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel of Record